# Mississippi Electronic Courts
## Fifth Chancery Court District (Hinds Chancery Court - Jackson)
### CIVIL DOCKET FOR CASE #: 25CH1:17-cv-000307

| | |
|---|---|
| The State of MS ex rel. Jim Hood, ATTORNEY GENERAL for the STATE OF MS v. CAMLINE,L.L.C.(f/k/a PAMLAB, L.L.C.) | Date Filed: 03/10/2017 |
| | Jury Demand: None |
| | Nature of Suit: 177 Fraud |
| Assigned to: J. Dewayne Thomas | Jurisdiction: General |

**Plaintiff**

| | | |
|---|---|---|
| **The State of MS ex rel. Jim Hood, ATTORNEY GENERAL for the STATE OF MS** | represented by | **George W. Neville**<br>Office of the Mississippi Attorney General<br>Post Office Box 220<br>JACKSON , MS 39205<br>601-359-3680<br>Fax: 604-359-2003<br>Email: gnevi@ago.state.ms.us<br>*ATTORNEY TO BE NOTICED* |
| | | **Jacqueline Harper Ray**<br>MS Attorney General<br>P.O. Box 220<br>JACKSON , MS 39205<br>601-961-5821<br>Fax: 601-961-5437<br>Email: jacra@ago.state.ms.us<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael S. Smith , II**<br>Musgrove/Smith Law<br>599 Highland Colony Parkway<br>Suite 110<br>RIDGELAND , MS 39157<br>601-852-1696<br>Fax: 601-852-1714<br>Email: michael@musgrovesmith.com<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **CAMLINE,L.L.C.(f/k/a PAMLAB, L.L.C.)** | represented by | **Joseph Stroble**<br>Bradley Arant Boult Cummings<br>188 East Capitol Street<br>JACKSON , MS 39201<br>601-948-8000 |

Email: jstroble@bradley.com
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/10/2017 | 2 | COMPLAINT against CAMLINE,L.L.C.(f/k/a PAMLAB, L.L.C.), filed by The State of MS ex rel. Jim Hood, ATTORNEY GENERAL for the STATE OF MS. (Attachments: # 1 Civil Cover Sheet) (TS) (Entered: 03/10/2017) |
| 03/10/2017 | 3 | SUMMONS Issued for service upon CAMLINE,L.L.C.(f/k/a PAMLAB, L.L.C.). (TS) (Entered: 03/10/2017) |
| 03/13/2017 | 4 | NOTICE of Appearance by Michael S. Smith, II on behalf of The State of MS ex rel. Jim Hood, ATTORNEY GENERAL for the STATE OF MS (Smith, Michael) (Entered: 03/13/2017) |
| 03/20/2017 | 5 | Summons Returned Executed re 3 Summons Issued filed by The State of MS ex rel. Jim Hood, ATTORNEY GENERAL for the STATE OF MS. The served subpoena is directed to Camline, L.L.C. (f/k/a Pamlab, L.L.C.). (Hawthorne, Alison) Modified on 3/30/2017 (AR). (Entered: 03/20/2017) |
| 04/14/2017 | 6 | NOTICE of Notice of Removal by CAMLINE,L.L.C.(f/k/a PAMLAB, L.L.C.) (Stroble, Joseph) (Entered: 04/14/2017) |
| 04/14/2017 | 7 | NOTICE of Appearance by Joseph Stroble on behalf of CAMLINE,L.L.C.(f/k/a PAMLAB, L.L.C.) (Stroble, Joseph) (Entered: 04/14/2017) |

**IN THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI**

**THE STATE OF MISSISSIPPI** *ex rel.* JIM HOOD,
ATTORNEY GENERAL for the STATE of MISSISSIPPI

EDDIE JEAN CARR, CHANCERY CLERK

**PLAINTIFF**

BY T. Summers D.C.

v.

Civil Action No G-2017-307 T/1

**CAMLINE, L.L.C. (f/k/a/ PAMLAB, L.L.C.)**

**DEFENDANT**

MAR 10 2017

## COMPLAINT

Plaintiff, the State of Mississippi, by and through its Attorney General (hereinafter "the State") files this Complaint against the above-named Defendant and alleges, on information and belief, the following:

### I.   INTRODUCTION

1.      The Defendant has taken advantage of the enormously complicated and non-transparent market for prescription drugs by engaging in an unlawful scheme to cause the State of Mississippi to pay for drugs that were not eligible for Medicaid reimbursement and had not received approval by the Food and Drug Administration ("FDA"). The scheme involves representations by the Defendant to the State that its National Drug Codes ("NDCs") are FDA approved and eligible for Medicaid reimbursement when in fact, they are not. The State directly relies on these representations in approving the reimbursement for providers of prescription drugs. Defendant marketed these unapproved drugs to healthcare providers as being Covered Outpatient Drugs, and therefore reimbursable by the State. Defendant's fraudulent marketing of its unapproved prescription drugs has resulted in increased market share and profits for the

1

Defendant while causing the State to pay for Defendant's products that would otherwise not be covered by Medicaid. The Defendant's NDCs are attached hereto as Exhibit A, which includes the estimated relevant time period for each NDC at issue. The drugs listed on Exhibit A were manufactured, marketed, distributed, and/or sold during the relevant time period by Defendant, which may include its predecessor entities and/or all of its past and present components, subsidiaries, and affiliate entities, by contractual agreement and/or by having substantially the same business purpose, operation, customers, management, and/or ownership.

2.      Fair and appropriate drug reimbursement is a matter of great importance to the State and its citizens. Expenditures by the State for prescription drug reimbursements have increased dramatically in the past several years as a result, in part, of Defendant's fraudulent scheme of marketing unapproved drugs. Each year Mississippi spends hundreds of millions of dollars on prescription drugs under the Mississippi Medicaid program. For example, in fiscal year 2011, Mississippi Medicaid spent approximately $551 million on prescription drugs. The increase in prescription-drug costs has contributed to a healthcare-funding crisis within the State that requires action to ensure fair dealing between Defendant and the State.

3.      The misinformation marketed and disseminated by Defendant throughout the healthcare industry, both publicly and privately, caused claims for uncovered, ineligible products to be submitted to the State. The State, in reliance on the Defendant's representations that its drugs were eligible for reimbursement, reimbursed providers for drugs not covered by the Medicaid program.

4.      The State is accountable to its citizens and taxpayers for how it spends limited

State resources, and it is obligated to pursue any party whose unlawful conduct has led to the overspending of State funds. Consequently, the State, by and through its Attorney General, brings this action to recover all amounts paid for unapproved and ineligible prescription drugs by the State as a result of the fraudulent and deceptive conduct of Defendant. The State further seeks to require Defendant to account for and disgorge all profits obtained by it as a result of its improper and unlawful actions.

5.      This lawsuit seeks legal and equitable redress for the fraudulent, willful and wanton reporting conduct of Defendant, who has profited from its wrongful acts and practices at the expense of the State.

## II.   PARTIES

6.      This action is brought for and on behalf of the sovereign State of Mississippi and its citizens, by and through Jim Hood, the duly elected and current Attorney General of the State of Mississippi, pursuant to, *inter alia*, the Mississippi Constitution, Miss. Const. art. 6 § 173 (1980), the provisions of Mississippi's Medicaid Fraud Control Act, Miss. Code Ann. § 43-13-219 *et. seq.*, Mississippi's Regulation of Business for Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et. seq.*, and the common law and statutory authority of the Attorney General to represent the State of Mississippi and its residents.

7.      The acts alleged to have been done by Defendant in this Complaint were authorized, ordered, done, and/or ratified by its respective officers, directors, agents, employees or representatives while engaged in the management, direction, control, or transaction of its respective business affairs.

### **Defendant Camline**

3

8.     Defendant Camline, L.L.C. ("Camline" and/or Defendant), f/k/a Pamlab, L.L.C., is a Louisiana limited-liability company engaged in the business of manufacturing, distributing, marketing, and/or selling pharmaceuticals with its principal place of business located at 5001 Highway 190, Suite C-1, Covington, LA 70433. Camline conducts business throughout the State of Mississippi. Camline regularly and continuously conducted business within this Judicial District and unlawfully derived substantial revenue from transactions and occurrences conducted within this Judicial District.

### III.     JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court pursuant to Miss. Code Ann. § 9-5-81 and article 6 Section 159 of the Mississippi Constitution, in addition to the fact that all the claims asserted herein arise exclusively under Mississippi statutory or common law.

10.     The State of Mississippi asserts no claims governed by federal law, as all claims herein are exclusively state law claims for relief. The State of Mississippi makes no claim that would give rise to federal jurisdiction, nor does the alignment of the named parties create federal jurisdiction.

11.     The issues presented in the Complaint herein do not implicate significant or substantial federal issues and do not turn on the necessary interpretation of federal law. The State expressly asserts that the only causes of action asserted and the only remedies sought herein, are founded upon the statutory, regulatory, common, and decisional laws of the State of Mississippi. The Complaint herein does not confer diversity jurisdiction upon the federal courts pursuant to 28 U.S.C. § 1332 and does not invoke federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The assertion of federal jurisdiction over the claims asserted herein would

improperly disturb the Congressionally-approved balance of federal and state responsibilities. Accordingly, any attempt to remove this case to federal court would be without a reasonable legal basis in fact or law.

12.     This Court has personal jurisdiction over the Defendant pursuant to Miss. Code Ann. § 13-3-57 because the Defendant does business and performs work or service in this Judicial District, State and County, purposefully directs or directed its actions in this Judicial District, State and County, and/or has the requisite minimum contacts with this Judicial District, State and County necessary to constitutionally permit the Court to exercise jurisdiction.

13.     Venue is proper pursuant to §§ 11-11-3 and 11-5-1 as this Defendant caused a substantial act or omission to occur or caused a substantial event that caused injury to the State to occur in this Judicial District and this Defendant may be found in this Judicial District. This Defendant, individually or in conjunction with others, supplies, markets, sells, promotes, advertises, distributes, and otherwise seeks Medicaid reimbursements from the State in Mississippi, and specifically, within Hinds County.

## IV.   STATEMENT OF FACTS

14.     The Mississippi Medicaid program is a state-administered program with federal matching funds that pays for medical care, including prescription-drug benefits, for Mississippi's children and low-income, elderly, and disabled citizens. Mississippi Medicaid currently covers about 644,000 individuals. In 2008, prescription-drug benefits represented nearly 10% of Mississippi Medicaid's annual budget. The total annual cost of prescription drugs to Mississippi Medicaid continues to increase exponentially, with an annual cost of about $488.4 million during fiscal year 2014. Mississippi Medicaid reimburses medical providers,

5

including pharmacies, for drugs prescribed for and dispensed to Mississippi Medicaid recipients.

15.     In order for its drugs to be eligible for reimbursement, the Defendant must enter into a Medicaid Drug Rebate Agreement, which requires Defendant to expressly represent which drugs are eligible for Medicaid reimbursement and submit a list of all Covered Outpatient Drugs, identified by NDC number, quarterly.  Covered Outpatient Drugs are generally defined as those that may only be dispensed by prescription and are approved for safety and effectiveness as a prescription drug by the FDA.  Thus, unapproved drugs, including those deemed less than effective by the FDA, and non-drug products, such as vitamins, are not Covered Outpatient Drugs eligible for reimbursement.

16.     Defendant entered into the Medicaid rebate agreement.  By signing the rebate agreement and participating in the Medicaid program, Defendant agreed to abide by all laws, regulations, and procedures applicable to Medicaid. Specifically, by participating in the Medicaid program, Defendant assumed a duty not to mislead the State when reporting information regarding its drugs covered by Medicaid.

17.     Defendant submits lists of its Covered Outpatient Drugs to the Center for Medicare and Medicaid Services ("CMS") and reaffirms and updates those lists quarterly.  The states receive these lists from CMS and continuously rely on the Defendant's information for determining drug reimbursement eligibility. The Defendant knows the states rely on these covered drug lists.  Furthermore, the Defendant expects the states to populate their covered drug formularies based upon these lists. The Defendant knew the State of Mississippi continuously reimbursed for its drugs, and thus, there existed at all relevant times a duty owed to the State and

6

its Medicaid agency by the Defendant to inform the State of the eligibility status of its drugs on a continuing basis.

18.     Reimbursement for prescription drugs under Mississippi Medicaid is based on the information supplied by the Defendant.  However, the Defendant improperly reported that its NDCs were Covered Outpatient Drugs eligible for reimbursement, and the State relied upon this representation on a continuing basis when reimbursing for drugs in the Medicaid program.  At all times relevant to this action, Defendant was aware of the State of Mississippi's Medicaid drug reimbursement procedures and its use and reliance upon the drug information reported by the Defendant. Each and every time the Defendant caused the State to reimburse for an ineligible drug listed in Exhibit A is a violation of Mississippi law.

## Defendant's Marketing of Unapproved Drugs

19.     Defendant knowingly, willfully, wantonly, and/or intentionally provided or caused to be provided inaccurate information for its drugs to the CMS and various nationally known drug industry reporting services. Pursuant to its rebate agreement, Defendant was required to reaffirm and update the list of its Covered Outpatient Drugs to CMS on a quarterly basis. Defendant additionally had a duty to inform the State of the eligibility status of its drugs on a continuing basis.  Defendant, however, represented that its NDCs were Covered Outpatient Drugs, and thus eligible for Medicaid reimbursement, when in fact they were not.

20.     Defendant intentionally reported unapproved drugs, non drug products (products not covered by the FDA), and/or products deemed less than effective by the FDA as Covered Outpatient Drugs. All of these products are ineligible for Medicaid reimbursement.

7

21.     For instance, Defendant reported false FDA approval information and false information regarding drugs deemed less than effective by the FDA. Defendant perpetrated this scheme of marketing unapproved and ineligible drugs for the drugs listed in Exhibit A.

22.     CMS and the reporting services published the information to various reimbursers, such as the State of Mississippi's Medicaid agency.

23.     The false information disseminated by Defendant throughout the healthcare industry was and is used by the State of Mississippi with respect to reimbursement for prescription drugs. At all relevant times to this action, the State's Medicaid agency relied on the representations provided by Defendant to CMS and the healthcare industry in determining whether the drugs were eligible for Medicaid reimbursement.

24.     Defendant knew that by submitting false information concerning its drugs, it would cause the State to pay for unapproved and ineligible drugs. Defendant misled the State Medicaid agency into believing the drugs at issue were Covered Outpatient Drugs and therefore reimbursable.

25.     Defendant knowingly, willfully, wantonly, and/or intentionally concealed the true status of its respective drugs from the State's Medicaid agency. Defendant knew its drugs were not eligible for Medicaid reimbursement. Defendant also knew that reporting and publishing false information would cause the State to pay for drugs not rightfully reimbursable.

26.     Unless governmental or industry surveys, lawsuits, or criminal or regulatory investigations publicly reveal the true nature of a particular drug at issue, the State of Mississippi's Medicaid agency, like other state Medicaid agencies, is not privy to the true reimbursement eligibility of NDCs. Defendant has concealed the true nature of its drugs'

8

approval statuses from the State for the purpose of avoiding detection of the fraudulent scheme described herein.

27.     Defendant fraudulently reported certain prescription drugs as Covered Outpatient Drugs eligible for reimbursement and marketed them to physicians, pharmacists, and others in the healthcare industry as being Covered Outpatient Drugs.  For each time period listed for the NDCs in Exhibit A, the Defendant reported that the NDC was an FDA approved drug eligible for reimbursement every quarter during the time period. The Defendant also continuously caused the State to believe its drugs were eligible for reimbursement. As a result of this  fraudulent scheme, Defendant has prevented third parties, including the State's Division of Medicaid, from determining that said drugs were not eligible for Medicaid reimbursement.

28.     The Defendant's unlawful conduct, as outlined above, conferred a benefit upon the Defendant in the form of increased market share and resulting increased profits. The Defendant has retained and continues to retain the benefits conferred upon it as a result of its unlawful conduct, to the detriment of the State of Mississippi.

29.     The unfair, fraudulent, wanton, and deceptive practices engaged in by Defendant in creating and reporting, or causing to be reported, false approval information for its drugs, or otherwise concealing the true nature of its drugs as an inducement to providers to utilize Defendant's drugs, has resulted in the State paying for unapproved drugs, while at the same time enriching Defendant with excessive, unjust, and illegal profits.

**Other Lawsuits, Settlements, Government Investigations, and Criminal Proceedings**

30.     The State's Complaint was not drafted in a vacuum. Many pharmaceutical manufacturers have already been sued for the same or similar Medicaid fraud scheme in a *qui*

9

*tam* case. *United States ex rel. Conrad v. Abbott Labs. Inc.*, Civil Action No. 02-CV-11738-RWZ (D. Mass., Sept. 26, 2011) (Doc. 260, Tenth Amended Complaint). A number of states have moved to intervene in that action.

31.     Published opinions and other public documents generated in the course of this parallel federal litigation reveal that those Defendants fraudulently marketed their drugs as Covered Outpatient Drugs, and thus, eligible for reimbursement.   The federal court has previously denied a Motion to Dismiss filed by Healthpoint, LTD in the unapproved drug *qui tam* case. The Department of Justice press release states in part:

> *The government's complaint alleges that Healthpoint knew Xenaderm was unapproved, and knew of or recklessly disregarded the FDA notices concerning trypsin's lack of effectiveness as a debriding agent. According to the complaint, Healthpoint nonetheless falsely represented to the United States that the drug was eligible for Medicaid and Medicare reimbursement. As a result of Healthpoint's false statements, the United States alleges that Healthpoint caused Medicaid and Medicare to pay tens of millions of dollars for an unapproved drug that was ineligible for reimbursement.*

> *"The problem with unapproved drugs is that FDA does not know what is in them, whether they are effective or safe, or how they are made," said FDA Commissioner Margaret M Hamburg, MD. "FDA routinely works together with companies to ensure that safe, effective products are available for Americans. As this case demonstrates, when companies place consumers at risk by selling drugs without required FDA approval, they should not profit from that."*

32.     With respect to Healthpoint's Motion to Dismiss, the Court held in part:

> *Here, the government alleges that between 2002 and 2006, Healthpoint, on quarterly statements submitted to the Centers for Medicare and Medicaid Services, recklessly coded Xenederm as eligible for reimbursement - when in fact it was not. And it charges that these submissions were "material to the claims for government reimbursement for Xenederm." Docket # 217 at 70-71. These allegations adequately provide "the who, what, where, and when of the allegedly false claim and satisfy the flexible"* <u>Gagne</u>

formulation for pleading sufficiency in the FCA context. <u>Duxbury</u>, 579
F.3d at 29.

33.     The State of Mississippi believes that the above-described fraudulent scheme
was utilized by the Defendant in this case.

34.     Federal criminal actions have been instituted against manufacturers related to
unapproved drugs. As part of the criminal proceedings, various drug companies pleaded guilty
to and/or agreed to settle criminal charges for having engaged in unlawful marketing with
respect to certain of their prescription drugs reimbursed under federal programs, such as
Medicare, and state programs, such as Medicaid. These manufacturers paid fines and civil
penalties for this admittedly wrongful conduct.

35.     The guilty pleas, settlements, and admissions of fault by these manufacturers
demonstrate that this conduct is a far-reaching and widespread scheme in the pharmaceutical
industry to unlawfully market unapproved drugs to increase profits for their products. For
example, in 2010, Forest Pharmaceuticals, Inc. agreed to pay more than $313 million to settle
criminal and civil liability arising from Forest's marketing of unapproved drugs. Forest
pleaded guilty to distributing an unapproved drug into interstate commerce. The DOJ press
release stated:

> *Today, U.S. District Judge Nancy Gertner, sentenced drug manufacturer
> FOREST PHARMACEUTICALS, INC. to pay a criminal fine of $150
> million and forfeit assets of $14 million following the company's guilty
> plea last year.*
>
> *"Today 's sentencing of Forest Pharmaceuticals is a victory for the
> system designed to protect patients from potentially harmful prescription
> drugs," said Daniel R. Levinson, Inspector General of the Department of
> Health & Human Services. "Attempts to circumvent that system by*

*selling misbranded and unapproved drugs simply will not be tolerated."*

36.     Government investigations by the FDA also revealed fraudulent drug approval schemes by various manufacturers.     For example, the FDA has publicly stated that unapproved drugs pose significant harm to the public, including Mississippi Medicaid recipients. In fact, the FDA has acknowledged that there are unapproved drugs being marketed without FDA approval:

> *The Agency has serious concerns that drugs marketed without required FDA approval may not meet modern standards for safety, effectiveness, quality, and labeling. Physicians and other healthcare practitioners, along with consumers, cannot assume that all marketed drugs have been found by the FDA to be safe and effective. For a variety of historical reasons, some drugs, mostly older products, continue to be marketed illegally in the U.S. without required FDA approval. The manufacturers of unapproved drug products have not received FDA approval and do not conform to a monograph for making over-the-counter (OTC) drugs. The lack of evidence demonstrating that these unapproved drugs are safe and effective is a significant public health concern.*

www.fda.gov

37.     Defendant's scheme of tricking the system into believing certain drugs have FDA approval has been long lasting and well hidden from the rest of the healthcare industry. As noted by the FDA:

> *Many healthcare providers are unaware of the unapproved status of drugs and have continued to unknowingly prescribe them because the drugs' labels do not disclose that they lack FDA approval. In addition, since many unapproved drugs are marketed without brand names and have been available for many years, it is often assumed that these unapproved drugs are generic drugs. This is not correct.*
>
> *Unapproved drug products have not been evaluated and approved by FDA. Unapproved drugs are not generic medications, and neither their safety nor their efficacy can be assured.*

www.fda.gov

38.     Some of the conduct described herein goes back over several years prior to the filing of this Complaint.   As explained above, however, the nature and extent of the fraudulent scheme were not known to the State because information concerning the true nature that should have been submitted to the reporting services was concealed and not publicly available.   It has only been through regulatory investigations, criminal actions, and civil actions that the impact of the fraudulent scheme on the State has been indicated or revealed.   Even today, the true nature of many of the drugs in question for the entire time period at issue is not known by the State.

39.     For purposes of specificity of pleading (particularly with respect to the fraud allegations), suffice it to say that Defendant is and has been on notice of the claims asserted herein as a result of the many investigations and actions undertaken around the country on this same subject.   Indeed, Defendant should know, without further allegation from the State, exactly which unapproved drugs are being marketed and being reimbursed by Mississippi Medicaid.

## V. DAMAGES

### A. Damages to State

40.     The foreseeable and intended consequences of the Defendant's conduct has been to bilk the State of Mississippi and its taxpayers out of Medicaid dollars through its fraudulent scheme.   Liquidated damages to the State are estimated at $2,974,143.69.

41.     In particular, as a direct result of Defendant's illegal scheme, the State of

Mississippi has made excess Medicaid payments for the unapproved drugs

42.    The State seeks to recover these costs, actual damages and/or restitution as well as injunctive relief to halt the Defendant's pilfering of this vital State program and an accounting of all profits or gains derived in whole or in part by the Defendant through its fraudulent, unfair, and/or deceptive acts or practices complained of herein.

### B. Damages to Taxpayers

43.    The foreseeable and intended consequences of the Defendant's conduct has also resulted in increased strain on the wallets and personal budgets of Mississippi's taxpayers whose income taxes go to fund Mississippi's Medicaid program.  As noted, if the Defendant had properly reported these drugs as not Medicaid-reimbursable, the State would have never paid for the drugs nor paid disbursement fees to pharmacists.

### C. Damages to Beneficiaries

44.    The foreseeable and intended consequences of the Defendant's conduct have also resulted in injuries to the poor and disabled beneficiaries of the Mississippi Medicaid program. The direct result of the Defendant's actions has been the reduction of pharmaceutical benefits.

## VI.   CAUSES OF ACTION

### a.  Violations of Mississippi Medicaid Fraud Control Act

45.    The State hereby repeats, incorporates by reference and re-alleges each and every allegation set forth above in this Complaint.

46.    Defendant's reporting of its products as Covered Outpatient Drugs eligible for reimbursement for purposes of obtaining Medicaid reimbursements for providers in return for an increase in market share, constitutes a violation of Mississippi's Medicaid Fraud Control Act

14

("MFCA"), Miss. Code Ann. § 43-13-201, *et seq.*

47.     By knowingly and willfully providing and/or publishing NDCs and falsely representing prescription drugs as being Covered Outpatient Drugs with knowledge that providers' claims for reimbursement from the State's Medicaid program are based upon those misrepresentations, all in order to increase its market share, Defendant unlawfully submitted and/or caused false claims to be submitted to the Mississippi Medicaid program in violation of Miss. Code Ann. § 43-13-213.

48.     Defendant further violated the MFCA by fraudulently concealing the falsity and inaccuracy of its unapproved drugs from the State and its Medicaid agency.

49.     As the actual and proximate result of Defendant's violations of the MFCA, the State has suffered actual damages by paying for drugs that were not eligible for Medicaid reimbursement.

50.     Defendant is directly liable to the State for damages including civil penalties equal to the full amount received by the Defendant, plus an additional civil penalty equal to triple the full amount received by the Defendant.  Miss. Code Ann. § 43-13-225.

### b. Violations of Mississippi Consumer Protection Act

51.     The State hereby repeats, incorporates by reference and re-alleges each and every allegation set forth above in this Complaint.

52.     Defendant's reporting of FDA approval for its drugs, and reporting its drugs as Covered Outpatient Drugs eligible for reimbursement to consumers within the stream of commerce, knowing that the State would use them to authorize Medicaid reimbursements, constitutes unfair and deceptive practices in violation of the Mississippi's Consumer

15

Protection Act ("MCPA"), Miss. Code Ann. § 75-24-1, *et seq.*

53.     In the course of trade or commerce, Defendant intentionally, fraudulently, and deceitfully reported or caused to be reported drugs not approved by the FDA and not eligible for reimbursement for the purpose and with the intent to induce the State to pay Medicaid reimbursements for prescription drugs, resulting in larger market share and/or profits for Defendant, in violation of Miss. Code Ann. § 75-24-5.

54.     By intentionally, fraudulently, and deceitfully reporting or causing to be reported drugs not approved by the FDA and not eligible for reimbursement for the purpose and with the intent to induce the State to pay Medicaid reimbursements for each of its products listed in Exhibit A, resulting in larger market share and/or profits for the Defendant, the Defendant has used unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce in violation of § 75-24-5(1).

55.     By intentionally, fraudulently, and deceitfully reporting or causing to be reported drugs not approved by the FDA and not eligible for reimbursement for the purpose and with the intent to induce the State to pay Medicaid reimbursements for each of its products listed in Exhibit A, the Defendant violated § 75-24-5(2)(b) by misrepresenting the source, sponsorship, approval or certification of the goods.

56.     By intentionally, fraudulently, and deceitfully reporting or causing to be reported drugs not approved by the FDA and not eligible for reimbursement for the purpose and with the intent to induce the State to pay Medicaid reimbursements for each of its products listed in Exhibit A, resulting in larger market share and/or profits for the Defendant, the Defendant violated § 75-24-5(2)(c) by misrepresenting the affiliation, connection, or association with, or

16

certification by another of the goods.

57.     By intentionally, fraudulently, and deceitfully reporting or causing to be reported drugs not approved by the FDA and not eligible for reimbursement for the purpose and with the intent to induce the State to pay Medicaid reimbursements for each of its products listed in Exhibit A, resulting in larger market share and/or profits for the Defendant, the Defendant violated § 75-24-5(2)(e) by representing that goods have characteristics or benefits or quantities that they do not have or that the Defendant has approval for its drugs that it does not have.

58.     By intentionally, fraudulently, and deceitfully reporting or causing to be reported drugs not approved by the FDA and not eligible for reimbursement for the purpose and with the intent to induce the State to pay Medicaid reimbursements for each of its products listed in Exhibit A, resulting in larger market share and/or profits for the Defendant, the Defendant violated § 75-24-5(2)(g) by representing that the goods are of a particular standard, quality, or grade.

59.     Defendant knew or should have known that the State of Mississippi relied upon its representations pertaining to Covered Outpatient Drugs in making reimbursement payments for prescription drugs. Therefore, there existed at all relevant times, a duty owed to the State and its Medicaid agency, by Defendant, not to mislead the State when providing and/or reporting NDCs and the approval status of its drugs and to inform the State of the true eligibility status of its drugs.

60.     As the actual and proximate result of Defendant's unfair and deceptive practices, the State has suffered actual damages by paying grossly excessive amounts for unapproved drugs.

17

61.     This action is brought pursuant to Miss. Code Ann. § 75-24-1 *et. seq.*, including but not limited to: § 75-24-5, § 75-24-9, § 75-24-11, § 75-24-15, for injunctive relief, compensatory damages, restitution, and any other orders or judgments as may be necessary to restore to the State any monies or property acquired by means of any unfair or deceptive trade practices in or affecting the stream of commerce.

62.     The Attorney General has statutory authority to bring an action in the name of the state against any person that he has reason to believe "is using, has used, or is about to use" any method constituting a violation of the MCPA.  As alleged herein, the Defendant's actions constitute unfair and deceptive practices in violation of the MCPA entitling the Attorney General to seek a permanent injunction. Miss. Code Ann. § 75-24-9.

63.     Furthermore, because the Defendant willfully used or are using unfair and/or deceptive trade acts or practices, it is liable for civil penalties not to exceed Ten Thousand Dollars ($10,000.00) per violation.  Miss Code Ann. § 75-24-19.  Each and every time the Defendant caused the State to reimburse for an ineligible drug listed in Exhibit A is a violation of the MCPA.

### c.  Fraud

64.     The State hereby repeats, incorporates by reference and re-alleges each and every allegation set forth above in this Complaint.

65.     By knowingly and willfully providing, publishing, and/or causing to be published NDCs as Covered Outpatient Drugs eligible for reimbursement by the State of Mississippi, when in fact the drugs were not eligible for reimbursement, Defendant engaged and continues to engage in repeated fraudulent acts and practices resulting in larger market share

18

and/or profits for the Defendant, thus committing fraud against the State of Mississippi.

66.    Knowing that the State of Mississippi relies upon its reported NDCs and FDA approval information in making reimbursement payments for only approved and eligible drugs, there existed at all relevant times a duty owed to the State and its Medicaid agency, by Defendant, not to mislead the State when providing and/or reporting NDCs and eligibility statuses of drugs and to inform the State of the true eligibility status of its drugs.

67.    Defendant knowingly and intentionally made or caused to be made false and misleading statements and representations regarding prescription drug approval in reporting of NDCs as Covered Outpatient Drugs eligible for reimbursement, on a periodic and continuing basis, for publication and dissemination to the State of Mississippi and its Medicaid agency with the intent to increase its market share and/or profits.

68.    Defendant made these false representations that their prescription drugs were Covered Outpatient Drugs, knowing they were false and/or with reckless disregard of their truth.

69.    Defendant knew the false representations of the unapproved prescription drug eligibility made to the State and its Medicaid agency were to be used as the basis for Medicaid reimbursements and were therefore material.

70.    Defendant fraudulently concealed the falsity and inaccuracy of the unapproved and ineligible statuses from the State and its Medicaid agency.

71.    Defendant misrepresented the drug eligibility with the intent to induce the State of Mississippi and its Medicaid agency to rely on the fraudulent reimbursement eligibility of NDCs and pay Medicaid reimbursements for ineligible products, resulting in larger market share and/or profits for the Defendant.

19

72.     The State of Mississippi and its Medicaid agency did not know of the fraudulent eligibility representations for these drugs and had a right to rely on the drug eligibility representations made by Defendant.

73.     The State of Mississippi and its Medicaid agency reasonably relied upon the Defendant's report of Covered Outpatient Drugs and eligibility information in order to reimburse providers.

74.     As an actual and proximate result of Defendant's fraudulent conduct, and the State of Mississippi's reasonable reliance thereon, the State has paid too much in connection with purchases or reimbursements of purchases of Defendant's unapproved and ineligible drugs, resulting in larger market share and/or profits for the Defendant.

75.     Defendant's misrepresentations are continuing, as it regularly and periodically continues to issue, or causes to issue, false eligibility information and false FDA approval information for publication.

76.     The State and its Medicaid agency are entitled to judgment against Defendant for the pecuniary loss suffered as a direct and proximate result of the Defendant's fraudulent conduct.

### d. Negligent Misrepresentation

77.     The State hereby repeats, incorporates by reference and re-alleges each and every allegation set forth above in this Complaint.

78.     By providing, publishing, and/or causing to be published NDCs as Covered Outpatient Drugs eligible for reimbursement by the State of Mississippi, when in fact the drugs were not eligible for reimbursement, resulting in larger market share and/or profits for the

20

Defendant, Defendant made and continues to make negligent misrepresentations to the State of Mississippi.

79. There existed at all relevant times, legal duties owed to the State by Defendant to provide accurate information to the State when providing and/or reporting the eligibility of its prescription drugs.

80.    Defendant breached its duties to provide accurate information to the State by affirmatively providing false and misleading statements regarding the unapproved nature and reimbursement eligibility of their drugs and failing to inform the State when it unknowingly reimbursed for an ineligible drug.

81.    The State of Mississippi and its Medicaid agency did not know of the ineligibility of the drugs and had a right to rely on the representations made by Defendant.

82.    The State of Mississippi and its Medicaid agency reasonably relied upon the Defendant's false report of Covered Outpatient Drugs and eligibility information in order to reimburse providers.

83.    As an actual and proximate result of Defendant's misrepresentations, and the State of Mississippi's reasonable reliance thereof, the State has been damaged by paying for unapproved, ineligible drugs, resulting in larger market share and/or profits for the Defendant.

84.    The State and its Medicaid agency are entitled to judgment against Defendant for restitution and civil penalties for the losses incurred by the State of Mississippi, and its citizens, as a direct and proximate result of Defendant's misrepresentations.

### e.  Unjust Enrichment

85.    The State hereby repeats, incorporates by reference and re-alleges each and every

21

allegation set forth above in this Complaint.

86.     By knowingly providing, publishing, and/or causing to be published NDCs as Covered Outpatient Drugs eligible for reimbursement by the State of Mississippi, when in fact the drugs were not eligible for reimbursement, for purposes of gaining an economic advantage through an enlarged market share, Defendant has been unjustly enriched.

87.     Defendant's unlawful conduct, as outlined above, conferred a benefit upon Defendant in the form of increased market share and resulting increased profits.

88.     Defendant has retained and continues to retain the benefits conferred upon it as a result of its unlawful conduct, to the detriment of the State of Mississippi.

89.     Defendant's retention of such benefits is unjust, as they were obtained by fraudulently providing, publishing, and/or causing to be published NDCs as Covered Outpatient Drugs for unapproved drugs and drugs not eligible for reimbursement to the State with the knowledge that the State would rely on such representations to its detriment.

90.     As a result of these false and misleading statements and representations, the State has paid for drugs which would not otherwise be reimbursable.

91.     Defendant knew it was not entitled to the profits that resulted from the sales obtained through the use of marketing unapproved drugs. The Defendant should be required to account for and make restitution to the State of all such amounts obtained through the use of such misrepresentations.

## VII.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, the State of Mississippi, by and through Jim Hood, its duly elected Attorney General, requests that this Court grant the following

relief against the Defendant as follows:

      (1)     an order enjoining the Defendant from continuing the fraudulent, deceptive and/or unfair acts or practices complained of herein, and requiring correcting measures;

      (2)     an award of compensatory damages to the State in such amount as is proved at trial;

      (3)     an award of all civil penalties provided for by statute;

      (4)     an award of punitive damages;

      (5)     an accounting of all profits or gains derived in whole or in part by the Defendant through its fraudulent, unfair and/or deceptive acts or practices complained of herein;

      (6)     a constructive trust of the moneys illegally and impermissibly obtained from the Defendant's scheme;

      (7)     an order imposing a constructive trust on and/or requiring disgorgement by the Defendant of all profits and gains earned in whole or in part through the fraudulent, unfair and/or deceptive acts or practices complained of herein;

      (8)     an award of costs and prejudgment and post judgment interest;

      (9)     an award of all attorneys' fees and costs; and

      (10)    such other and further relief as the Court may deem appropriate and just.

RESPECTFULLY SUBMITTED, this the _10th_ day of March, 2017.

**STATE OF MISSISSIPPI**
JIM HOOD, ATTORNEY GENERAL

By: _____
George W. Neville (MBN 3622)
Jacqueline H. Ray (MBN 100169)
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
Fax: (601) 359-2003
gnevi@ago.state.ms.us
jacra@ago.state.ms.us

**OF COUNSEL:**

Ronnie Musgrove (MBN 3698)
Michael S. Smith, II (MBN 103575)
**MUSGROVE/SMITH LAW**
599 Highland Colony Pkwy, Suite 110
Ridgeland, MS 39157
Telephone:  (601) 852-1696
Facsimile:  (601) 852-1714

William Tucker May (MBN 1962)
**BARRY, THAGGARD,**
**MAY & BAILEY LLP**
505 Constitution Avenue
Meridian, MS 39301
Telephone: (601) 693-2393
Facsimile: (601) 482-7855

24

EXHIBIT A

| Manufacturer | NDC | Min Date of Service | Max Date of Service |
|---|---|---|---|
| Camline | 00525076201 | 12/13/2002 | 12/13/2002 |
| Camline | 00525078001 | 7/6/2000 | 10/27/2003 |
| Camline | 00525078801 | 3/5/2001 | 3/30/2005 |
| Camline | 00525612101 | 9/13/2000 | 6/17/2005 |
| Camline | 00525612301 | 9/23/2000 | 11/29/2000 |
| Camline | 00525613101 | 10/11/2002 | 2/17/2007 |
| Camline | 00525636716 | 10/15/1999 | 9/30/2002 |
| Camline | 00525642516 | 4/13/2000 | 6/24/2005 |
| Camline | 00525674801 | 8/6/2003 | 11/27/2011 |
| Camline | 00525674805 | 11/12/2003 | 12/17/2007 |
| Camline | 00525675204 | 8/5/2003 | 5/15/2008 |
| Camline | 00525675216 | 9/9/2003 | 11/22/2011 |

# COVER SHEET
## Civil Case Filing Form
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

| Court Identification Docket # | | | Case Year | Docket Number |
|---|---|---|---|---|
| County # | Judicial District | Court ID (CH, CI, CO) | | |
| 2 5 | 1 | C H | 2 0 1 7 | 1 3 0 7 |

County # 2 5 | Judicial District 1 | Court ID C H | Case Year 2 0 1 7 | Docket Number 1 3 0 7

G | Local Docket ID

Mississippi Supreme Court Form AOC/01
Administrative Office of Courts (Rev 2016)

| Month | Date | Year |
|---|---|---|
| 0 3 | 1 0 | 1 7 |

This area to be completed by clerk

Case Number if filed prior to 1/1/94

In the **CHANCERY** Court of **HINDS** County — **FIRST** Judicial District

**Origin of Suit** (Place an "X" in one box only)
- [X] Initial Filing
- [ ] Reinstated
- [ ] Foreign Judgment Enrolled
- [ ] Transfer from Other court
- [ ] Other
- [ ] Remanded
- [ ] Reopened
- [ ] Joining Suit/Action
- [ ] Appeal

**Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form** Individual

| Last Name | First Name | Maiden Name, if applicable | M.I. | Jr/Sr/III/IV |
|---|---|---|---|---|

___ Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of ___

___ Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity
D/B/A or Agency ___

**Business** The State of Mississippi ex rel. Jim Hood, Attorney General for the State of Mississippi
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated

___ Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A ___

**Address of Plaintiff**

**Attorney (Name & Address)** George W. Neville, PO Box 220, Jackson, MS 39205    MS Bar No. 3822

___ Check ( x ) if Individual Filing Initial Pleading is NOT an attorney
Signature of Individual Filing:

**Defendant - Name of Defendant - Enter Additional Defendants on Separate Form**
Individual

| Last Name | First Name | Maiden Name, if applicable | M.I. | Jr/Sr/III/IV |
|---|---|---|---|---|

___ Check ( x ) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of ___

___ Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A or Agency ___

**Business** Camline, LLC (f/k/a Pamlab, LLC)
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated

___ Check ( x ) if Business Defendant is acting in the name of an entity other than the above, and enter below:
D/B/A ___

**Attorney (Name & Address) - If Known**    MS Bar No.

___ **Check ( x ) if child support is contemplated as an issue in this suit.***
*If checked, please submit completed Child Support Information Sheet with this Cover Sheet

**Nature of Suit** (Place an "X" in one box only)

| Domestic Relations | Business/Commercial | Children/Minors - Non-Domestic | Real Property |
|---|---|---|---|
| [ ] Child Custody/Visitation | [ ] Accounting (Business) | [ ] Adoption - Contested | [ ] Adverse Possession |
| [ ] Child Support | [ ] Business Dissolution | [ ] Adoption - Uncontested | [ ] Ejectment |
| [ ] Contempt | [ ] Debt Collection | [ ] Consent to Abortion | [ ] Eminent Domain |
| [ ] Divorce:Fault | [ ] Employment | [ ] Minor Removal of Minority | [ ] Eviction |
| [ ] Divorce: Irreconcilable Diff. | [ ] Foreign Judgment | [ ] Other | [ ] Judicial Foreclosure |
| [ ] Domestic Abuse | [ ] Garnishment | **Civil Rights** | [ ] Lien Assertion |
| [ ] Emancipation | [ ] Replevin | [ ] Elections | [ ] Partition |
| [ ] Modification | [ ] Other | [ ] Expungement | [ ] Tax Sale: Confirm/Cancel |
| [ ] Paternity | **Probate** | [ ] Habeas Corpus | [ ] Title Boundary or Easement |
| [ ] Property Division | [ ] Accounting (Probate) | [ ] Post Conviction Relief/Prisoner | [ ] Other |
| [ ] Separate Maintenance | [ ] Birth Certificate Correction | [ ] Other | **Torts** |
| [ ] Term. of Parental Rights-Chancery | [ ] Mental Health Commitment | **Contract** | [ ] Bad Faith |
| [ ] UIFSA (eff 7/1/97; formerly URESA) | [ ] Conservatorship | [ ] Breach of Contract | [X] Fraud |
| [ ] Other | [ ] Guardianship | [ ] Installment Contract | [ ] Intentional Tort |
| **Appeals** | [ ] Heirship | [ ] Insurance | [ ] Loss of Consortium |
| [ ] Administrative Agency | [ ] Intestate Estate | [ ] Specific Performance | [ ] Malpractice - Legal |
| [ ] County Court | [ ] Minor's Settlement | [ ] Other | [ ] Malpractice - Medical |
| [ ] Hardship Petition (Driver License) | [ ] Muniment of Title | **Statutes/Rules** | [ ] Mass Tort |
| [ ] Justice Court | [ ] Name Change | [ ] Bond Validation | [ ] Negligence - General |
| [ ] MS Dept Employment Security | [ ] Testate Estate | [ ] Civil Forfeiture | [ ] Negligence - Motor Vehicle |
| [ ] Municipal Court | [ ] Will Contest | [ ] Declaratory Judgment | [ ] Premises Liability |
| [ ] Other | [ ] Alcohol/Drug Commitment (Involuntary) | [ ] Injunction or Restraining Order | [ ] Product Liability |
| | | [ ] Other | [ ] Subrogation |
| | | | [ ] Wrongful Death |
| | | | [ ] Other |

[ ] Alcohol/Drug Commitment (Voluntary)
[ ] Other

**IN THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI**

**THE STATE OF MISSISSIPPI** *ex rel.* JIM HOOD,
ATTORNEY GENERAL for the STATE of MISSISSIPPI



    **PLAINTIFF**

v.

                                 Civil Action No G-2017-307  T/1

**CAMLINE, L.L.C. (f/k/a/ PAMLAB, L.L.C.)**

    **DEFENDANT**

### SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HINDS

                                     **F I L E D**

                                     MAR 10 2017

To:    CAMLINE, L.L.C. f/k/a PAMLAB, L.L.C.
       *Through its agent for service:*
       Robert S. Rooth              EDDIE JEAN CARR, CHANCERY CLERK
       c/o Chaffe McCall, LLP.           BY *T. Semmons* D.C.
       1100 Poydras Street, Suite 2300
       New Orleans, LA 70163

### NOTICE TO DEFENDANT

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND
YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

      You are required to mail or hand-deliver a copy of a written response to the Complaint to
Michael S. Smith, II, an attorney for the Plaintiff, at MUSGROVE/SMITH LAW, the mailing
address of which is Post Office Box 4670, Jackson, Mississippi 39296, and the street address of
which is 599 Highland Colony Pkwy, Suite 110, Ridgeland, MS 39157. Your response must be
mailed or delivered within 30 days from the date of delivery of this Summons and Complaint or
a judgment by default will be entered against you for the things demanded in the Complaint.

      You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

      Issued under my hand and the seal of the Court, this ___10th___ day of ___March___ 2017.

                                CLERK OF HINDS COUNTY, MISSISSIPPI

                        By: *T. Semmons*

## CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI
## FIRST JUDICIAL DISTRICT

The State of Mississippi *ex rel.* Jim Hood,
Attorney General for the State of Mississippi

      Plaintiff,

                 v.

Camline, LLC f/k/a Pamlab, LLC,

      Defendant.

Civil Action No.
17-cv-307

### Notice of Entry of Appearance

Michael S. Smith, II, of the law firm of Musgrove/Smith Law, 599 Highland Colony Parkway, Suite 110, Ridgeland, Mississippi 39157, enters his appearance in this matter as counsel of record for Plaintiff The State of Mississippi.

The State of Mississippi requests that Michael S. Smith, II, be provided copies of all notices given and papers served in this case, including motions, applications, petitions, complaints, and/or other pleadings, orders, judgments reports, and any other documents filed or served in this proceeding.

[SPACE INTENTIONALLY LEFT BLANK]

**DATED** this 13th day of March, 2017.

Respectfully Submitted,

**STATE OF MISSISSIPPI**
JIM HOOD, ATTORNEY GENERAL

**BY:**     s/ *Michael S. Smith, II*
Ronnie Musgrove (MSB# 3698)
Michael S. Smith, II (MSB# 103575)
MUSGROVE/SMITH LAW
599 Highland Colony Parkway, Suite 110
Ridgeland, Mississippi 39157
(t) 601.852.1696 | (f) 601.852.1714
musgrove@musgrovesmith.com
michael@musgrovesmith.com

*Attorneys for The State of Mississippi*

## Certificate of Service

I, Michael S. Smith, II, certify that on this 13th day of March, 2017, a true and

correct copy of the previous document was electronically filed with the Clerk of Court

using the MEC System which sent notification of the filing to all counsel of record.

s/ *Michael S. Smith, II*
Michael S. Smith, II

## IN THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI

**THE STATE OF MISSISSIPPI** *ex rel.* JIM HOOD,
ATTORNEY GENERAL for the STATE of MISSISSIPPI

      **PLAINTIFF**

**v.**                                           **Civil Action No <u>G-2017-307</u>**

**CAMLINE, L.L.C. (f/k/a/ PAMLAB, L.L.C.)**

      **DEFENDANT**

### <u>PROOF OF SERVICE—SUMMONS</u>

Name of Person or Entity Served:    CAMLINE, L.L.C. f/k/a PAMLAB, L.L.C.

      I, <u>Alison D. Hawthorne</u>, served the Summons and Complaint upon the person or entity named above in the manner set forth below (process server must check proper space and provide all additional information that is requested and pertinent to the mode of service used):

☐    FIRST CLASS MAIL AND ACKNOWLEDGMENT SERVICE. By mailing (by first class mail, postage prepaid), on the date stated in the attached Notice, copies to the person served, together with copies of the form of notice and acknowledgment and return envelope, postage prepaid, addressed to the sender. (*Attach completed acknowledgement of receipt pursuant to M.R.C.P. Form 1B*).

☐    PERSONAL SERVICE. I personally delivered copies to _____ on the _____ day of _____, 2017, where I found the person in _____ County in the State of Mississippi.

☐    RESIDENCE SERVICE. After exercising reasonable diligence, I was unable to deliver copies to said person within _____ County, Mississippi. I served the summons and complaint on the _____ day of _____ , 2017, at the usual place of abode of the person by leaving a true copy of the summons and complaint with _____ , who is the _____ (here insert wife, husband, son, daughter, or other person as the case may be), a member of the family of the person served above the age of 16 and willing to receive the summons and complaint, and thereafter on the _____ day of _____, 2017, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

☑    CERTIFIED MAIL SERVICE. By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served. (*Attach signed return receipt or the return envelope marked "Refused."*)

      At the time of service, I was at least 18 years of age and not a party to this action.

Process Server's Name:        Alison D. Hawthorne
Process Server's Address:     272 Commerce Street, Montgomery, Alabama 36104

STATE OF ALABAMA
COUNTY OF MONGTOMERY

     Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named Alison D. Hawthorne who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service—Summons" are true and correct as therein stated.

Process Server Signature

     Sworn to and subscribed before me this the 20th day of March, 2017.

Notary Public

My Commission Expires:

November 2, 2020

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X *[signature]*  ☑ Agent  ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery  3-17-17 |
| 1. Article Addressed to:<br><br>CAMLINE, L.L.C. f/k/a PAMLAB, L.L.C.<br>c/o Robert S. Rooth<br>c/o Chaffe McCall, LLP.<br>1100 Poydras Street, Suite 2300<br>New Orleans, LA 70163 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2179 6193 9275 14

| 3. Service Type | |
|---|---|
| ☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☑ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

2. Article Number *(Transfer from service label)*

7013 2630 0000 0295 1869

PS Form **3811**, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

## IN THE CHANCERY COURT OF HINDS, MISSISSIPPI

**THE STATE OF MISSISSIPPI
EX REL. JIM HOOD, ATTORNEY GENERAL
FOR THE STATE OF MISSISSIPPI**

                                                                          **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO.: 2017-cv-307**

**CAMLINE, L.L.C. f/k/a PAMLAB, L.L.C.**                          **DEFENDANT**

### NOTICE OF FILING NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), Defendant Camline, L.L.C. f/k/a Pamlab, L.L.C. ("Defendant") hereby files a true and correct copy of the Notice of Removal of this cause of action from this Court to the United States District Court for the Southern District of Mississippi, Northern Division.  A copy of the Notice of Removal is attached hereto.

Respectfully submitted, this the 14th day of April, 2017.

/s/ *Joseph J. Stroble*
Joseph J. Stroble, MB # 10779
Alicia Netterville, MB # 105055
Bradley Arant Boult Cummings, LLP
Suite 400, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, Mississippi 39215-1789
Phone:  (601) 948-8000
Fax:     (601) 948-3000
jstroble@bradley.com
anetterville@bradley.com

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the MEC system which sent notification of such filing to all attorneys of record:

Dated: April 14, 2017

<u>/s/ *Joseph J. Stroble*</u>
Joseph J. Stroble, MB # 10779

## IN THE CHANCERY COURT OF HINDS, MISSISSIPPI

**THE STATE OF MISSISSIPPI**
**EX REL. JIM HOOD, ATTORNEY GENERAL**
**FOR THE STATE OF MISSISSIPPI**

                                                                 **PLAINTIFF**

**V.**                                           **CIVIL ACTION NO.: 2017-cv-307**

**CAMLINE, L.L.C. f/k/a PAMLAB, L.L.C.**                      **DEFENDANT**

### <u>ENTRY OF APPEARANCE</u>

PLEASE TAKE NOTICE that Joseph J. Stroble of the law firm of Bradley Arant Boult Cummings LLP hereby enters an appearance on behalf of Defendant Camline, L.L.C. (f/k/a Pamlab, L.L.C).

Respectfully submitted, this the 14th day of April, 2017.

                                      /s/ *Joseph J. Stroble*
                                      Joseph J. Stroble, MB # 10779
                                      Alicia Netterville, MB # 105055
                                      Bradley Arant Boult Cummings, LLP
                                      Suite 400, One Jackson Place
                                      188 East Capitol Street
                                      Post Office Box 1789
                                      Jackson, Mississippi 39215-1789
                                      Phone:  (601) 948-8000
                                      Fax:      (601) 948-3000
                                      jstroble@bradley.com
                                      anetterville@bradley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the MEC system which sent notification of such filing to all attorneys of record:

Dated: April 14, 2017

/s/ *Joseph J. Stroble*
Joseph J. Stroble, MB # 10779