**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**THE STATE OF MISSISSIPPI** *ex rel.* JIM HOOD,
ATTORNEY GENERAL for the STATE of MISSISSIPPI                              **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.: 3:17-CV-00266-DPJ-FKB**

**CAMLINE, L.L.C. F/K/A PAMLAB, L.L.C.**                                   **DEFENDANT**

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND
AND FOR COSTS AND FEES**</u>

Federal courts are courts of limited jurisdiction.[1] Federal jurisdiction either exists, or it does not exist; there is no grey area and in this case there is certainly no federal jurisdiction. Pursuant to 28 U.S.C. § 1447(c) and for the reasons that follow, this action should be remanded to the Chancery Court of Hinds County, Mississippi, with costs assessed against Defendant.

<u>**INTRODUCTION**</u>

The State of Mississippi ("State") filed a Complaint against Defendant Camline, L.L.C. f/k/a Pamlab, L.L.C. ("Defendant") in the Chancery Court of Hinds County, Mississippi alleging that the Defendant marketed unapproved drugs and/or Mississippi Medicaid ineligible drugs within the State. The company directed its marketing efforts toward doctors and their patients, many of whom are Medicaid recipients. Based on Defendant's misrepresentations and actions, Mississippi physicians prescribed the unapproved and/or ineligible drugs to patients who in turn filled the prescriptions. As a result, the State's Medicaid program reimbursed medical providers for the unapproved and/or ineligible drugs. Had Defendant not marketed its drugs as approved for safety and effectiveness by the Food and Drug Administration ("FDA") and/or eligible for Medicaid reimbursement, doctors would not have written prescriptions for them, Medicaid

1

recipients would not have filled the prescriptions, and the State ultimately would not have spent Medicaid funds on the unapproved drugs and/or ineligible drugs.

In its Complaint, the State alleged only state-law claims: (1) violations of Mississippi's Medicaid Fraud Control Act ("MFCA"), Miss. Code Ann. § 43-13-201, *et seq.*, (2) violations of the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. §§ 75-24-1, *et seq.*, (3) Fraud, (4) Negligent Misrepresentation, and (5) Unjust Enrichment.  Despite the State only alleging violations of state law, Defendant argues the Court has federal-question jurisdiction. Defendant came into the State of Mississippi and represented to everyone—the State, its citizens, and physicians—that its drugs were safe and effective, approved by the FDA, and/or eligible for Medicaid reimbursement when that had not been so determined. Such illegal marketing and misrepresentations are at the center of the State's claims, as it was this illegal conduct that led the State to spend Medicaid funds on drugs it otherwise would not have covered. In addition to recovering the overpayment of State funds, the State seeks fines, penalties, and damages under Mississippi law. The State brings this action exclusively under the laws of Mississippi. No claims arising under or involving substantial disputed issues of federal law are asserted, yet Defendant filed a Notice of Removal ("Notice") on April 14, 2017, alleging federal question jurisdiction.  As demonstrated herein, the State's claims do not necessarily raise a substantial, disputed, federal issue and federal jurisdiction is, therefore, lacking.

## LEGAL STANDARD

The party seeking removal of an action bears the burden of proving the existence of federal jurisdiction.[2]  Removal of an action from state court to federal court raises significant

---

[1] *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002).
[2] *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187 (5th Cir. 1989).

federalism concerns because it deprives the state court of an action properly before it.[3]   As such, Congress intended to limit removal jurisdiction.[4]   These federalism concerns are substantiated when, as here, the removed action has been filed by the State in state court.[5]   Without a federal cause of action on the face of the complaint, the removing party must demonstrate that the state-law claims necessarily raise a substantial, disputed, federal issue that can be entertained in federal court without disturbing the balance of federal and state judicial responsibilities.[6]   Moreover, the well-pleaded complaint rule requires the Court to focus solely on the face of the Complaint as opposed to any anticipated defenses when analyzing removal jurisdiction.[7]   Further, under the well-pleaded complaint rule, a suit will "arise under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]."[8]   Thus, neither a federal defense nor the petition for removal can provide the basis for removal jurisdiction.[9]

The Fifth Circuit set out a four-part test to determine when a claim fits into this narrow, "arising under" category allowing removal on federal-question grounds.[10]   To invoke federal-question jurisdiction, the federal issue must be: 1) necessarily raised; 2) actually disputed; 3) substantial; and 4) capable of resolution in federal court without disrupting the federal-state

---

[3] *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

[4] *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996).

[5] *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 n. 22 (1983)("reluctant to snatch cases which a State has brought from the courts of the State, unless some clear rule demands it").

[6] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

[7] *Gully v. First Nat'l Bank*, 299 U.S. 109, 115 (1936).; *Berhnard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

[8] *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908).

[9] *Id.*; *Gully*, 299 U.S. at 113.

[10] *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008); *DePass v. Parish of Jefferson* (In re Katrina Canal Breaches Litig.), 342 Fed. Appx. 928 (5th Cir. 2009).

balance of judicial responsibilities approved by Congress.[11]  The Defendant fails to demonstrate these required elements.

## ARGUMENT

Federal-question jurisdiction is proper over "civil actions arising under the Constitution, laws, or treaties of the United States."[12] Plaintiffs most often invoke this provision for federal-question jurisdiction when pleading a cause of action created by federal law.[13] Federal-question jurisdiction will lie over state-law claims only when the claims implicate substantial questions of federal law.[14]  In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the United States Supreme Court described what it takes to invoke federal-question jurisdiction over an action asserting only state-law claims: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[15] It is this category of cases—described by the Supreme Court as "slim," "small," and "special"[16] and that this Court has recognized as "'very narrow' and subject to multiple limitations"[17]—into which the Defendant seeks to squeeze this case.

The vast majority of courts have remanded actions where a state has brought state-law claims against a pharmaceutical company.[18] A number of reasons support remand in this case:

---

[11] *Singh*, 538 F.3d at 338 (interpreting *Grable,* 545 U.S. at 313).
[12] 28 U.S.C. § 1331.
[13] *Grable,* 545 U.S. at 312.
[14] *Id.*
[15] *Id.* at 314.
[16] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 & 701 (2006).
[17] *Biloxi Freezing & Processing, Inc. v. Mississippi Power Co.,* No. 116CV301DCBMTP, 2016 WL 6808158, at *7 (S.D. Miss. Nov. 17, 2016)
[18] *See e.g. Caldwell ex rel. Louisiana v. GlaxoSmithKline, LLC*, No. 13-191-JJB-SCR (M.D. La. June 28, 2013) (Riedlinger, Mag.); *Caldwell v. Abbott Laboratories, Inc.*, No. 11-542-BAJ-SCR (M.D. La. Mar. 5,

4

- The federal issues Defendant cites are not necessarily raised by the state-law claims' elements, but are defensive in nature and part of the factual predicate underlying the state-law claims.

- Because there is no dispute as to the meaning of the federal statutes cited by Defendant in its removal notice—either the drugs were FDA approved or not (Covered Outpatient Drug status is a question of fact, not one of law)—the State's claims do not raise a disputed federal issue.

- Because Defendant's liability will solely depend on its breaches of duties created and defined by state law, the State's action does not implicate a substantial federal issue.

- The absence of a federal private right of action and the State's obligation under the Medicaid Act to recover Medicaid funds from liable third parties shows that federal jurisdiction in this case would be inconsistent with congressional intent.

- A finding of federal-question jurisdiction in this case—a state-law case filed against pharmaceutical companies—could shift a large volume of cases from state courts to federal courts.

- Considerations of comity make courts reluctant to snatch cases brought by a state from the courts of that state.

- Courts strictly construe removal statutes against removal and for remand. [19]

- Any doubt as to whether removal is proper must be resolved in favor of remand. [20]

For all these reasons, the Court should remand this action.

I.   **The Majority of Courts Analyzing Federal Jurisdiction Under Similar Facts Have Found Jurisdiction to be Lacking and Ordered Remand.**

In cases similar to the one at hand, where a state has brought suit against a pharmaceutical company for the illegal marketing of drugs in violation of state law, other courts have concluded that remand is proper. In *McGrath ex rel. Montana v. Janssen, LP*,[21] the State of Montana alleged that the Defendant sold drugs in a defective condition and marketed the drugs for uses not approved by the FDA. Montana sought to recover damages for injuries caused by the

---

2012) (Riedlinger, Mag.), *report & recommendation accepted*, No. 11-542-BAJ-SCR (Mar. 28, 2012) (Jackson, C.J.)

[19] *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996) (citation omitted).

[20] *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (citations omitted).

[21] No. CV 09-58-H-CCL, 2009 WL 9136812 (D. Mont. Nov. 30, 2009).

drugs and Medicaid funds expended for unapproved uses.[22] All of its claims arose under a state statute or state common law, including claims for unfair trade practices, fraud, deceit, and unjust enrichment.[23]   Arguing that Montana's claims necessarily raised substantial issues of federal law, the Defendant removed the case to federal court based on federal-question jurisdiction.[24] Specifically, and similar to what the Defendant argues here, the defendants in the Montana case argued that the complaint, which alleged they marketed drugs for uses not approved by the FDA, required interpretation of FDA and Medicaid statutes and regulations.[25]

To determine if the claims *necessarily* raised substantial issues of federal law, the court looked to the claims' elements.[26] The court analyzed whether the elements of the state-law claims raised the federal issue or whether the federal issue was raised by the potential for certain evidence that could be used to prove the elements.[27] If the federal issue is part of the state-law claims' elements, the court concluded, removal might be proper.[28] But if the federal issue is defensive in nature and part of the facts underlying the state-law claims, remand was required.[29]

The court ultimately remanded the action based on four reasons.   First, no disputed federal statute was necessary to the elements of the state-law claims.[30] While Montana may prove its case by evidence relating to violations of federal statutes and regulations, such proof was not necessary or unusual in state-court cases.[31] Quoting the Supreme Court in *Grable*, the

---

[22] *McGrath ex rel. Mont. v. Janssen, LP*, No. CV 09-58-H-CCL, 2009 WL 9136812, at *1.
[23] *Id.*
[24] *Id.* at *2.
[25] *Id.* at *3.
[26] *See id.* ("The crux of the matter is whether the prima facie elements of Plaintiff's claims necessarily raise the federal issue or whether the federal issue is merely raised by the potential for certain evidence utilized to prove the elements.").
[27] *McGrath*, 2009 WL 9136812, at *3.
[28] *Id.*
[29] *Id.*
[30] *Id.* at *4.
[31] *Id.*

6

court said that the phrase "federal issue" is not a password that opens federal courts to state-law actions that embrace a point of federal law.[32]

Second, the court considered the throng of original filings and removal cases raising state claims with embedded federal issues that could occur if courts exercised jurisdiction over cases such as the one before it.[33] If courts found that state-tort cases filed against pharmaceutical companies raised substantial federal issues, a large volume of cases could shift from state courts to federal courts.[34]

Third, Montana did not bring the type of claims that would benefit from a federal forum.[35] Unlike *Grable*—which only involved the interpretation of a federal statute—the claims at issue were for negligence, fraud, and deceit.[36]

Fourth, the court found it relevant that no private right of action existed under the Federal Food, Drug, and Cosmetic Act to redress Montana's injuries, yet the federal Medicaid Act requires states to seek recovery of ill-gotten Medicaid funds.[37] The court found that the lack of a private cause of action is evidence of congressional intent as to the scope of federal jurisdiction when allegations such as Montana's are made.[38]

In sum, the court concluded that Montana's claims did not necessarily raise substantial federal issues, and that deciding the claims would disturb the congressionally approved balance between federal and state courts.[39] The court remanded the action.[40]

The same outcome resulted in *Utah v. Eli Lilly & Co.*,[41] which was also an action brought by a state against a pharmaceutical company. The State of Utah alleged that it

---

[32] *Id.* (quoting *Grable*, 545 U.S. at 314).
[33] *McGrath*, 2009 WL 9136812, at *4.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *McGrath*, 2009 WL 9136812, at *5.
[40] *Id.*
[41] 509 F. Supp. 2d 1016.

improperly dispersed Medicaid funds for unapproved uses of the defendant's drug.[42] It sought to recover those funds under Utah law, as well as future costs for Medicaid recipients harmed by the drug's undisclosed side effects.[43] The defendant removed the action, arguing, in part, that the court had federal-question jurisdiction.[44] Specifically, it argued that Utah's claims depended on the interpretation and application of federal Medicaid law, the Federal Food, Drug, and Cosmetic Act, and FDA regulations.[45]  The court disagreed and remanded the action based on four reasons. First, to the extent that the defendant was arguing that Utah was responsible for making the Medicaid payments, the defendant asserted a defense that raised a federal issue, which is insufficient to confer federal jurisdiction.[46] Second, a federal issue embedded in a state-law claim will not confer federal jurisdiction when the federal statute does not provide a federal remedy for violations.[47] Third, there was no evidence of congressional intent indicating that federal jurisdiction is proper over state-law claims implicating Title XIX of the Social Security Act, which established the Medicaid program, and the Federal Food, Drug, and Cosmetic Act.[48] (This was particularly important because Congress requires states to seek recovery of Medicaid funds from liable third parties, but provided no federal cause of action to do so.) Fourth, removal would upset the balance between state and federal courts because of the lack of congressional intent, the lack of a private cause of action, and the Supreme Court's guidance that courts should be reluctant to snatch a state's case brought in that state's court system.[49]

The *Montana* and *Utah* decisions are just two of many. Most courts have concluded that remand is proper where a state brings state-law claims against a pharmaceutical company seeking to recover Medicaid funds—e.g.:

---

[42] *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1018.
[43] *Id.*
[44] *Id.* at 1020.
[45] *Id.* at 1021.
[46] *Id.* at 1022.
[47] *Id.*
[48] *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1023.
[49] *Id.* at 1024–25.

- *Caldwell ex rel. Louisiana v. GlaxoSmithKline, LLC*, No. 13-191-JJB-SCR, pp. 21–22 (M.D. La. June 28, 2013) (Riedlinger, Mag.) (attached as Exhibit 1): "Reading the Petition as a whole supports finding that the centerpiece of the plaintiff's state law claims is not just that the defendants marketed and promoted the nine prescription drugs for unapproved and off-label uses, but rather that they did so by engaging in intentionally false, fraudulent and misleading conduct. That conduct allegedly constituted an unfair method of competition, or unfair, deceptive acts or practices under the LUTPCPL, and it was that conduct which caused the submission of false or fraudulent claims for payment from the State's medical assistance programs, and which forms the basis of the state law claims for redhibition, fraud and unjust enrichment."

- *Caldwell v. Abbott Labs., Inc.*, No. 11-542-BAJ-SCR, p. 13 (M.D. La. Mar. 5, 2012) (Riedlinger, Mag.), *report & recommendation accepted*, No. 11-542-BAJ-SCR (Mar. 28, 2012) (Jackson, C.J.) (attached as Exhibits 2 and 3): "In determining whether the defendant's actions violated state law, the federally-approved label will be examined and compared to the uses being promoted and marketed. But liability will not depend on this inquiry. Liability will turn on whether the defendant's conduct was false or misleading, as defined by the LFDCA. Thus, the allegations in the Petition do not indicate that the violation of any federal law or regulation will be an actually disputed and substantial issue in determining whether the defendant's actions violated state law."

- *Caldwell ex rel. Louisiana v. Bristol Myers Squibb Sanofi Pharms. Holding P'ship*, No. 6:12-cv-00443, 2012 WL 3862454, at *11 (W.D. La. June 12, 2012): "In summary, even if federal law would not have permitted the state to avoid paying for the allegedly fraudulently-induced Plavix prescriptions, and even if federal law would not permit the state to be reimbursed for those prescriptions, the state may still seek damages from the defendants and/or civil penalties. In other words, a ruling in the state's favor is not necessarily dependent upon a finding that federal law would have allowed the state to avoid paying for certain Plavix prescriptions, but such a ruling is dependent upon a finding that the defendants' conduct in marketing Plavix violated a state statute."

- *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07-MD-01871, 2012 WL 1137097, at *2 (E.D. Pa. Apr. 4, 2012) (citation omitted): "GSK also argues that the States repeatedly invoked the federal Food, Drug, and Cosmetic Act ('FDCA') in the Complaints, including allegations that the FDA cited GSK for violations of the law in connection with its marketing of Avandia. Although Plaintiffs indeed so alleged, the mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of the federal statute."

- *Hood ex rel. Mississippi v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590, 601 (N.D. Miss. 2010) (emphasis in original): "Defendants proceed under the gestalt notion that, since Medicaid is largely a complex federal program, federal issues must somehow come

into play. However, Plaintiff's claims in this case do not focus on the federal aspects of the Medicaid scheme. Rather, Defendants' liability will depend upon its breach of duties as defined and created by state law. For example, if the State proves at trial that Defendants violated the Federal Medicaid Act, it would not necessarily follow that they committed Medicaid fraud as defined in Miss.Code Ann. § 43-13-213. . . . Thus, in this case, the central dispute will be fact-bound and situation-specific *under Mississippi law*."

- *New Mexico ex rel. King v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 2009 WL 8657144, at *2 (D.N.M. Jan. 26, 2009) (internal citations omitted): "In sum, the State claims that Defendants fraudulently caused physicians to prescribe [a prescription drug], thereby triggering the State's obligation under Medicaid to pay for this [prescription drug]. Claiming that Defendants wrongly triggered the State's obligation to pay for [prescription drugs] is completely different than claiming that the State should not have such an obligation as a matter of law, despite the requirements of the federal Medicaid statute. The former claim does not require any construction of the Medicaid statute or the State's obligations under that statute. It merely requires an examination of the facts surrounding Defendants' conduct to determine whether the State's claims, brought under state law, have merit."

- *South Carolina ex rel. McMaster v. AstraZeneca Pharm. LP*, No. 7:09-387-HFF, 2009 WL 1227848, at *4 (D.S.C. May 5, 2009) (citation omitted): "The Defendants' liability will solely depend upon their respective breach of duties as defined and created by state law. Simply put, it is not the act of causing the submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a false or fraudulent claim."

- *Hood ex rel. Mississippi v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 1:08CV166-JAD, 2009 WL 561575, at *2 (N.D. Miss. Mar. 4, 2009): "The Court finds that in the instant case, no substantial federal question exists to support a finding of jurisdiction. Defendants' liability will solely depend upon its breach of duties as defined and created by state law."

- *Arkansas ex rel. McDaniel v. Janssen Pharmaceutica*, No. 4:07-CV-001210-WRW, 2008 WL 819019, at *1 (E.D. Ark. Mar. 25, 2008): "This exact issue was raised before the Honorable Henry M. Herlong, Jr. in the District of South Carolina. In fact, Defendants' response briefs to the motions to remand are nearly identical. After reviewing the facts of this case, I believe that Judge Herlong's well-reasoned remand order is on point, and I adopt it in full."

- *South Carolina ex rel. McMaster v. Janssen Pharmaceutica, Inc.*, No. 6:07-1452-HMH, 2007 WL 2022173, at *2 (D.S.C. July 10, 2007) (citation omitted): "The court finds that in the instant case, no substantial federal question exists to support a finding of jurisdiction. The Defendants' liability will solely depend upon their respective breach of duties as defined and created by state law. Simply put, it is not the act of causing the

submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a false or fraudulent claim."

- *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 585 (E.D. Pa. 2007): "There is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the federal statutes involved here, namely, the FDCA [the Federal Food, Drug, and Cosmetic Act] and Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, which is the federal legislation establishing the Medicaid program."

- *Alaska v. Eli Lilly & Co.*, No. 3:06-CV-88 TMB, 2006 WL 2168831, at *3 (D. Alaska July 28, 2006) (emphasis in original) (citation omitted): "Defendant argues that 'Plaintiff's case is so infused with federal issues' under the FDCA and Medicaid law that the Complaint raises 'substantial and disputed' issues of federal law that provide this Court with original jurisdiction. . . . The Supreme Court has counseled that federal jurisdiction demands not only a contested federal issue but a *substantial* one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. The Court finds no substantial federal question in this matter at this time."

These cases represent the majority view that actions alleging the illegal marketing of drugs based on state law belong in state court. Further, the Middle District of Louisiana, when faced with a case that also alleged similar state-law causes of action for the Defendant's marketing and sale of drugs that were not properly approved for reimbursement by the State of Louisiana's Medicaid program, remanded the State of Louisiana's case.[50] The Defendants in the Louisiana case removed and argued that the claims were premised on interpretation of the FDCA, much like the Defendant argues here.[51] Specifically, the defendants in the Louisiana case argued that federal law would necessarily determine whether the drugs were or were not FDA approved and whether or not those drugs were eligible for reimbursement under Medicaid.[52] Further, like they do here, the parties disagreed regarding the interpretation of the FDA, the

---

[50] *State of Louisiana v. Abbott Laboratories, Inc., et al*, 13-cv-00681, Report and Recommendation ("R&R"), Doc. 130 (M.D. La., Sept. 10, 2014); *State of Louisiana v. Abbott Laboratories, Inc., et al*, 13-cv-00681, Ruling and Order, Doc. 134 (M.D. La., Sept. 30, 2014) (adopting R&R and Granting Motion to Remand).

[51] R&R at 4.

[52] *Id.*

Medicaid Act, and the regulations associated with both acts.[53]   In granting Louisiana's request for remand, the court recognized that the federal laws supposedly at issue "do not provide federal causes of action."[54]   The court further noted that the Louisiana case was more like *Merrell Dow Pharmaceuticals Inc. v. Thompson*, discussed more fully below, than *Grable*.   Finding that without a federal cause of action and without preemption, any "embedded federal issues here are even less substantial than in *Merrell Dow*,"[55] the court remanded the case.   Pointedly, the court commented:

> [i]f the mere need to rely on a broad range of federal laws in presenting or defending these claims is substantial enough to warrant exercising federal jurisdiction overly purely state law claims, then the shift to the federal courts of these and similar cases would likely be significant, rather than "microscopic."[56]

Despite the wealth of cases indicating removal was never proper here, Defendant cites a recent Fifth Circuit decision, *Board of Commissioners of the Southeast Louisiana Flood Protection Authority − East v. Tennessee Gas Pipeline Co. L.L.C.*, in an attempt to broaden the rule under which it seeks to travel.[57]   That narrow rule, however, is unchanged by the decision in *Tennessee Gas Pipeline.*   Therein, the Fifth Circuit recognized the state-law claims in that case rested on whether or not federal law created a duty, the breach of which resulted in the negligence and nuisance claims at issue.   In other words, it was a matter of federal law whether or not the duty even existed, the existence of which was a necessary element of the causes of action and the determination of the existence of that duty rested entirely on an interpretation of federal law.   Here, there is no question of the Defendant's duty.   The Defendant even recognizes that obligation in its Notice.[58]   Instead, the remaining question, which the Defendant repeatedly focuses on, is one of fact: whether the drugs at issue were properly approved; a yes or no

---

[53] *Id.*
[54] *Id.* at 11.
[55] *Id.* at 12-13.
[56] *Id.* at 14.
[57] Notice at ¶ 9 (citing *Bd. of Comm'rs of Se. La. Flood Prot. Auth. − E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 723 (5th Cir. 2017).
[58] *See* Notice at 1.

question that does not require legal interpretation.   Taking the factual allegations in the Complaint as true, as this Court must do when deciding remand,[59] the State's claims do not arise under federal law and do not implicate necessary, disputed, and substantial questions of federal law.   Specifically, assuming the Defendant's drugs are not properly approved, as the State alleges, then they are not Covered Outpatient Drugs, and no interpretation of federal law is necessary, much less to the point where this Court could consider it a substantial issue.   Unlike in *Tennessee Gas Pipeline Co.*, then, federal law is not a substantial factor of an element for the State's claims.   The State's claims are entirely a matter of state law and any reference to federal law presents part of the factual predicate underlying the State's claims.   At most, and as discussed above, the Defendant's argument regarding the approval of the drugs at issue is a defense and cannot, therefore, create federal question jurisdiction.

Further, the Defendant argues "the core issues of federal law – whether Defendant misrepresented that its products were eligible for Medicaid reimbursement – are disputed in this case." The statement is purposeful misdirection.   There is no federal cause of action in the State's Complaint or elsewhere in federal law, where the Defendant's misrepresentation to Medicaid could be a core issue.   Misrepresentation is a matter of state law and whether the Defendant's actions rise to that level will only be determined under Mississippi law.   First, the fact question of whether or not the Defendant's drugs at issue were approved will be determined (at this point, it is assumed the drugs were not properly approved as that fact is alleged in the Complaint). Once it has been determined that the Defendant's drugs were not properly approved, the legal issues surrounding the State's claims will be resolved solely as a matter of state law, i.e. can the State satisfy its burden under Mississippi law sufficient to demonstrate that the Defendant

---

[59] When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff. *Palermo v. Letourneau Techs., Inc.*, 542 F. Supp. 2d 499, 506 (S.D. Miss. 2008) (citing *Willy v. Coastal Corp.,* 855 F.2d 1160, 1163–64 (5th Cir.1988)).

violated the MFCA and the MCPA, whether the Defendant committed Fraud and Negligent Misrepresentation, and whether the Defendant was Unjustly Enriched by those actions.

The Defendant will, of course, defend its case in whatever manner it chooses.  Notably, though, the Defendant even argues in its Notice that it "intends to challenge" the State's interpretation of some aspects of the Medicaid requirements. [60]   The expected "challenge" the Defendant speaks of will constitute its defense to the State's claims.  As a defense, those challenges do not create a substantial disputed issue of federal law to support federal question jurisdiction.  The main thrust of the State's Complaint remains factual: whether the Defendant's drugs were properly approved and eligible for reimbursement under the Mississippi Medicaid program.  The Defendant does not dispute this requirement, nor offer any argument that the question is anything other than factual.  Thus, the State requests the Court to follow the majority of cases that have remanded similar actions.

## II.   Defendant Has Failed to Satisfy the *Grable* Factors.

The Supreme Court in *Grable* established four requirements for federal-question jurisdiction over purely state-law claims: (1) the state-law claim must necessarily raise a federal issue; (2) the federal issue must be disputed; (3) the federal issue must be substantial; and (4) federal jurisdiction must not disturb any congressionally approved balance between state and federal courts. [61]

### A.   The Defendant cites to defensive, federal issues or facts underlying the state-law claims, not issues "necessarily raised" by the elements of the state-law claims.

Federal-question jurisdiction exists only if a well-pleaded complaint establishes that federal law creates the plaintiff's claim or that the plaintiff's claim necessarily depends on a

---

[60] Notice at ¶ 13.
[61] *Grable*, 545 U.S. at 314.

substantial federal issue.[62] Under the well-pleaded complaint rule, courts look only to the claim and ignore defenses the defendant may raise.[63]

In the *Utah* case discussed above,[64] the court concluded that the federal issue was raised as a defense.[65] To the extent that a federal issue existed, the court said, it was not essential to resolving Utah's claims.[66] Instead, it was a way for the defendant to argue that Utah was obligated to expend the Medicaid funds it sought to recoup: "Inasmuch as Defendant attempts to establish that Plaintiff was, and continues to be, solely responsible for the amounts underlying the Medicaid claims at issue, Defendant asserts a defense which raises a federal question, and such is inadequate to confer federal jurisdiction."[67]

In the *Montana* case also discussed above,[68] not only did the court analyze whether the federal issue was defensive in nature, but also whether the federal issue was part of the state-law claims' elements: "Thus, the question is whether the federal issue is part of the elements of the state law claims or whether the federal issue is defensive in nature and part of the factual predicate underlying the state law claims."[69] The court ultimately determined that remand was proper, in part, because there was no federal issue essential to the elements of Montana's claims.[70] Although Montana may rely on the defendant's violations of federal law to prove its allegations, the court concluded, doing so was not unusual and did not create federal jurisdiction.[71]

---

[62] *Empire*, 547 U.S. at 689–90 (*quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

[63] *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008) (*citing PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005)).

[64] *See supra* pp. 6–8.

[65] *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1022.

[66] *Id.*

[67] *Id.* (*citing Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

[68] *See supra* pp. 4–6.

[69] *McGrath*, 2009 WL 9136812, at *3.

[70] *Id.* at *4.

[71] *Id.*

15

Further, in another pharmaceutical case, one faced by this Court, *Jamison v. Purdue Pharma Co.*,[72] the defendants argued that the plaintiffs' state-law claims "directly and repeatedly challenge the FDA-approved formulation, warnings, and labeling of Oxycontin." This Court, however, recognized that the argument "demonstrates, at most, that the defendants view FDA approval as a possible defense in this action. This in itself is insufficient to support federal jurisdiction."[73] This Court further determined federal question jurisdiction was lacking because:

> [T]he defendants have failed to show that a substantial question of federal law is a necessary element of one of the plaintiffs' well-pleaded state claims. The defendants have not, for example, identified which federal right the plaintiffs' must invoke to succeed in any of their state-law claims, or how the interpretation of any such right is necessary to the resolution of this case.[74]

The same analysis, applied in this case, also demonstrates that federal question jurisdiction is lacking. Specifically, the Defendant claims that a question of whether its drugs are Covered Outpatient Drugs is a substantial and disputed question of federal law, but it is instead a defense to the State's claims.

The analysis contained in these decisions applies to this case. First, if Defendant is arguing that the State was obligated to expend Medicaid funds to reimburse claims for its drugs regardless of its marketing efforts or despite their unapproved statuses[75] then the federal issues raised are defensive in nature. Under the well-pleaded complaint rule, the federal issues do not create federal jurisdiction. Second, the federal issues cited by Defendant is not part of the elements of the State's claims. The claims hinge on whether Defendant marketed its drugs in a way that caused the State to improperly expend Medicaid funds. The statuses of the drugs as

---

[72] 251 F. Supp. 2d 1315, 1325 (S.D. Miss. 2003)
[73] *Id.*
[74] *Id.*

16

unapproved and Medicaid-eligible are not elements of the State's claims, but are rather underlying facts supporting those claims. Therefore, federal issues are not necessarily raised by the state-law claims.

**B.      No issue of federal law is "actually disputed" under the *Grable* factors.**

For federal-question jurisdiction to lie over a state-law claim, the federal issue raised must actually be in dispute.[76] The Western District of Louisiana has noted that courts are hesitant to find federal jurisdiction when a dispute is absent: "Courts have been reluctant to find federal-question jurisdiction when it is alleged that a federal statute was violated but there is no dispute as to the meaning of the statute itself."[77]

In this case, even if a federal issue is necessarily raised by the State's claims, there is no dispute as to the meaning of any federal statute. Generally, covered outpatient drugs must be approved by the FDA (with certain exceptions) to qualify for payment under Medicaid.[78] Although Defendant alleges that it intends to challenge the State's interpretation of federal law, there is no federal law to interpret. Either its drugs were FDA approved or not—it is a black-and-white issue. There is no federal issue actually disputed.

**C.      The state-law claims do not turn on substantial questions of federal law, thus, federal-question jurisdiction is lacking.**

Federal jurisdiction demands not just a disputed federal issue, but a substantial one, evidencing a serious federal issue.[79] That was the conclusion reached by the Supreme Court in

---

[75] *See* Notice at ¶¶ 12 - 13.
[76] *Pa. v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d at 580.
[77] *Caldwell ex rel. La. v. Bristol Myers Squibb Sanofi Pharms. Holding P'ship*, No. 6:12-cv-00443, 2012 WL 3862454, at *7.
[78] *See* 42 U.S.C. § 1396r-8(k)(2)(A) (defining *covered outpatient drug*, in part, as drugs that are treated as prescribed drugs under 42 U.S.C. § 1396d(a)(12) and that are approved for safety and effectiveness as prescription drugs under the Federal Food, Drug, and Cosmetic Act).
[79] *Grable*, 545 U.S. at 313.

*Grable*.  Specifically, in *Grable*, the Internal Revenue Service ("IRS") seized Grable & Sons Metal Products, Inc.'s real property to satisfy the company's federal tax delinquency. [80] Before selling the property to Darue Engineering & Manufacturing, the IRS provided notice to Grable by certified mail. [81]  Years later, Grable brought an action in state court to quiet title. [82] Grable argued that 26 U.S.C. § 6335(a) required the IRS to provide notice of the sale by personal service, not certified mail. [83] Darue removed the case to federal court. [84]  The Court noted that federal courts should be able to hear cases that turn on substantial questions of federal law. [85] But the mere need to apply federal law was not enough to create "arising under" jurisdiction. [86] The phrase *federal issue* is not a password that opens federal courts to any state action that implicates a point of federal law. [87]

The Court found that federal jurisdiction was warranted. [88] The meaning of the federal statute—whether the law required personal service or was service by certified mail sufficient— was an essential element to Grable's claim to quiet title. [89] The parties actually disputed the meaning of the federal statute, and its meaning was the only contested legal or factual issue in the case. [90] The federal tax provision's meaning was an important issue of federal law that should be decided by a federal court. [91]

But as all the cases cited above suggest, [92] *Grable* is distinguishable from this case in several respects. First, the only issue in *Grable* was whether the actions of a federal agency (the

---

[80] *Id.* at 310.
[81] *Id.*
[82] *Id.* at 311.
[83] *Id.*
[84] *Id.*
[85] *Grable*, 545 U.S. at 312.
[86] *Id.* at 313.
[87] *Id.* at 314.
[88] *Id.*
[89] *Id.* at 315.
[90] *Id.*
[91] *Grable*, 545 U.S. at 315.
[92] *See supra* pp. 4–10.

IRS) complied with a federal statute,[93] whereas here the State's claims are triggered by Defendant's illegal marketing of its drugs. Second, the issue in *Grable* was a pure issue of law that would govern other cases involving 26 U.S.C. § 6335(a) (the tax-sale provision), whereas this case is necessarily fact-bound.[94]   Unlike in *Grable*, the focus of the State's claims is not on the interpretation of federal law, such as the Medicaid Act. This case is fact-bound: Did the way in which Defendant marketed its drugs create liability under Mississippi law? Thus, this case does not turn on substantial issues of federal law.

> **D.    Entertaining this action would be inconsistent with congressional judgment concerning the division between state and federal courts making federal jurisdiction improper.**

Even if this action posed a contested and substantial federal issue, the exercise of federal jurisdiction is subject to the Court's veto.[95] Any federal issue raised will qualify for a federal forum only if the exercise of federal jurisdiction is consistent with congressional judgment about the labor division between state and federal courts.[96]

The Supreme Court's decision in *Merrell Dow*[97] is instructive. The plaintiffs in that case alleged that their children were born with deformities because they ingested the defendant's drug during pregnancy.[98] The plaintiffs alleged in one count of their complaint that the drug was misbranded in violation of the Federal Food, Drug, and Cosmetic Act because its label did not provide an adequate warning of the drug's dangers.[99] The plaintiffs alleged that this violation of

---

[93] *See Empire*, 547 U.S. at 700 ("The dispute there [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases.").

[94] *See id.* at 700–01 ("*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.' Hart and Wechsler 65 (2005 Supp.). In contrast, Empire's reimbursement claim, McVeigh's counsel represented without contradiction, is fact-bound and situation specific.").

[95] *Grable*, 545 U.S. at 313.

[96] *Id.*

[97] 478 U.S. 804.

[98] *Merrell Dow*, 478 U.S. at 805.

[99] *Id.* at 805–06.

federal law constituted a rebuttable presumption of negligence.[100] The defendant removed the case to federal court.[101]

In its analysis, the Court noted that exploring the outer reaches of federal-question jurisdiction required determinations about congressional intent and judicial power.[102] Relevant to the analysis was the fact that the Federal Food, Drug, and Cosmetic Act contained no cause of action for violations.[103] Based on this fact, the Court concluded that federal-question jurisdiction was lacking: "[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[104]

The Court reaffirmed this decision in *Grable*. The Court said that *Merrell Dow* treated the absence of a private right of action under the federal law as relevant evidence as to congressional intent that federal-question jurisdiction requires.[105] The lack of a private cause of action and no preemption of state remedies for misbranding was an important clue concerning congressional intent and the scope of federal-question jurisdiction.[106] The absence of a cause of action was a missing "welcome mat" under the circumstances because exercising federal jurisdiction over a state misbranding action would attract other state actions with embedded federal issues.[107] To the Court, "no welcome mat meant keep out."[108]

The Court has since reiterated the importance of looking for some congressional intent concerning the exercise of federal jurisdiction over state claims.[109] Several courts have used the

---

[100] *Id.* at 806.
[101] *Id.*
[102] *Id.* at 810.
[103] *Id.*
[104] *Merrell Dow*, 478 U.S. at 814.
[105] *Grable*, 545 U.S. at 318.
[106] *Id.*
[107] *Id.*
[108] *Id.* at 319.
[109] *See Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1023 ("The *Empire* case, declining to extend *Grable*,

reasoning of *Merrell Dow*—the lack of a private cause of action under the Federal Food, Drug, and Cosmetic Act means keep out—to veto the exercise of federal-question jurisdiction in cases such as this.[110] Many courts note that the Medicaid Act actually requires states to try and recoup Medicaid funds from liable third parties,[111] which is additional evidence of congressional intent pertaining to the exercise of federal-question jurisdiction.[112] One court went as far as saying that

---

reaffirmed the importance of a federal court's responsibility to look for some indication that Congress intended the exercise of federal jurisdiction over claims 'ordinarily resolved in state courts,' and specifically noted that the category established by *Grable* was 'slim.'" (*quoting Empire*, 547 U.S. at 701)).

[110] *See McGrath*, 2009 WL 9136812, at *4 ("Congress has not provided a private right of action for such claims under the Food, Drug, and Cosmetic (the 'FDCA'), 21 U.S.C. §§ 301 *et seq.* This latter fact is not dispositive, but it is relevant evidence of congressional intent as to the FDCA's scope of federal jurisdiction. If Congress had wanted federal courts to entertain all disputes regarding drugs regulated by the Food and Drug Administration, Congress could have preempted the field."); *S.C. ex rel. McMaster v. AstraZeneca Pharms. LP*, No. 7:09-387-HFF, 2009 WL 1227848, at *5 ("Under these circumstances, the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'" (*quoting Grable*, 545 U.S. at 313)); *Hood ex rel. Miss. v. Ortho-McNeil-Janssen Pharms., Inc.*, 2009 WL 561575, at *3 (same); *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1023 ("There is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the federal statutes involved here, namely, the FDCA [the Federal Food, Drug, and Cosmetic Act] and Title XIX of the Social Security Act, which is the federal legislation establishing the Medicaid program.") (citation omitted); *S.C. ex rel. McMaster v. Janssen Pharmaceutica, Inc.*, No. 6:07-1452-HMH, 2007 WL 2022173, at *3 ("Under these circumstances, the fact that Congress provided no private right of action in the Federal Medicaid Act presents compelling evidence that a finding of federal jurisdiction in the instant case would not be 'consistent with congressional judgment about the sound division of labor between state and federal courts.'" (*quoting Grable*, 545 U.S. at 313)).

[111] *See* 42 U.S.C. § 1396a(a)(25) ("[T]he State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including health insurers, self-insured plans, group health plans . . . service benefit plans, managed care organizations, pharmacy benefit managers, or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service) to pay for care and services available under the plan . . . .").

[112] *See Hood ex rel. Miss. v. Ortho-McNeil-Janssen Pharms., Inc.*, 2009 WL 561575, at *3 ("Further supporting this finding is the fact that the Federal Medicaid Act requires states to seek recovery of Medicaid funds from liable third parties." (*citing* 42 U.S.C. § 1396a(a)(25))); *Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1023 ("The absence of any signal by Congress is especially important here where Congress has specifically required states to seek reimbursement from legally liable third parties, but has provided no federal cause of action to do so." (*citing* 42 U.S.C. § 1396a(a)(25))); *S.C. ex rel. McMaster v. Janssen Pharmaceutica, Inc.*, No. 6:07-1452-HMH, 2007 WL 2022173, at *3 ("Further supporting this finding is the fact that the Federal Medicaid Act requires states to seek recovery of Medicaid funds from liable third parties." (*citing* 42 U.S.C. § 1396a(a)(25))).

federal jurisdiction is not present when a federal statute requires action by a state, but fails to provide it with a cause of action: "Where a federal statute such as Medicaid requires a state to enforce liability against a third party but does not provide the ground for that liability, nor require establishment of a ground for liability, federal jurisdiction will not lie." [113]

Further, some courts have been concerned about the flood of state actions with embedded federal issues that could end up in federal court if they were to find federal-question jurisdiction present in cases similar to this one: "Were the courts to take the view that a substantial federal question is necessarily raised by state tort cases filed against pharmaceutical companies, there would be a real potential for a large volume of cases to shift from state courts to federal courts." [114]

Finally, the Supreme Court has cautioned courts against removing cases brought by a state from the court system of that state: "[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." [115] In this action, where the State seeks to recover Medicaid funds, there is no clear rule demanding that this Court accept jurisdiction. [116]

In sum, even if a disputed and substantial federal issue was present, the Court has the right to veto federal jurisdiction. And based on the facts of this case—lack of a private right of

---

[113] *N.Y. v. Lutheran Ctr. For the Aging, Inc.*, 957 F. Supp. 393, 403 (E.D.N.Y. 1997) (*citing Mass. v. Philip Morris Inc.*, 942 F. Supp. 690, 694 (D. Mass. 1996)); *accord Pa. v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d at 584–85 ("The mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of the federal statute." (*citing Merrell Dow*, 478 U.S. at 810–14)).

[114] *McGrath*, 2009 WL 9136812, at *4; *accord Hood ex rel. Miss. v AstraZeneca Pharms., LP*, 744 F. Supp. 2d at 601 ("However, in contrast to the facts in *Grable*, a finding of federal jurisdiction over any state cause of action implicating provisions of the Federal Medicaid Act and its accompanying regulations could 'attract a horde of original filings and removal cases raising other state claims with embedded federal issues.'" (*quoting Grable*, 545 U.S. at 318)).

[115] *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. at 22 n. 22.

[116] *See Utah v. Eli Lilly & Co.*, 509 F. Supp. 2d at 1025 ("No such clear rule exists here in the context of recovery of Medicaid funds.").

action under federal law, the State's obligation to pursue improperly dispersed Medicaid funds, the potential for state-court actions to flood the federal courts, and the fact that this action is brought by a state and was filed in state court—the Court should remand this action.

## III.   Because the State is a Party to this Action, Diversity Jurisdiction Does Not Exist.

Where a state is a party to an action, federal jurisdiction cannot be based on diversity "because a state is not a citizen for purposes of diversity jurisdiction."[117] Since the State is the plaintiff in this action, diversity jurisdiction does not exist.

## IV.   Because the State's Claims Are Not Completely Preempted, Removal Jurisdiction Is Not Proper.

The State's claims are not completely preempted by the Federal Food, Drug, and Cosmetic Act[118] or the Medicaid Act,[119] and Defendant has offered no argument to the contrary. Therefore, removal jurisdiction cannot be based on complete preemption.

## CONCLUSION

The Medicaid Act requires the State to recover Medicaid funds from liable third parties, but provides no private cause of action to do so. The State's only option is to pursue improperly dispersed funds through state-law claims, which is exactly what it has done.  For these reasons, the State respectfully requests that the Court remand the case to the Chancery Court of Hinds

---

[117] *Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 926 (5th Cir. 1995); *See also* Memorandum and Order, *In re Fresenius GranuFlo/NaturaLyte Dialysate Products Liability Litigation*, 76 F. Supp. 3d 268 (D. Mass. Jan. 2, 2015) (remanding the State of Mississippi's case because the State is not a citizen for diversity jurisdiction purposes.).

[118] *See Reider-Gordon v. Synthes Spine Co., L.P.*, No. CV 10-00641 GAF (Ex), 2011 WL 1901772, at *2 (C.D. Cal. May 17, 2011) ("The Court first explained that there was no complete preemption in this case because the FDCA [the Federal Food, Drug, and Cosmetic Act] does not completely preempt state law . . . .").

[119] *See N.D. Dep't of Human Servs. ex rel. Executive Dir. v. Ctr. For Special Needs Trust Admin., Inc.*, 759 F. Supp. 2d 1125, 1132 (D.N.D. 2011) ("Federal Medicaid law delegates the management of the Medicaid program, and recovery of Medicaid funds, to the states. The states are required to have laws in

County, Mississippi, wherein it was originally filed, order the clerk to strike the case from the federal docket, and award the State its fees and costs associated with the expense of removal and remand.

Dated this the 11th day of May, 2017.

**STATE OF MISSISSIPPI**
JIM HOOD, ATTORNEY GENERAL

**By**: /s/ Jacqueline H . Ray
George W. Neville (MBN 3822)
Jacqueline H. Ray (MBN 100169)
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
Fax: (601) 359-2003
gnevi@ago.state.ms.us
jacra@ago.state.ms.us

**OF COUNSEL:**

Ronnie Musgrove (MBN 3698)
Michael S. Smith, II (MBN 103575)
**MUSGROVE/SMITH LAW**
599 Highland Colony Pkwy, Suite 110
Ridgeland, MS 39157
Telephone:  (601) 852-1696
Facsimile:  (601) 852-1714

William Tucker May (MBN 1962)
**BARRY, THAGGARD,**
**MAY & BAILEY LLP**
505 Constitution Avenue
Meridian, MS 39301
Telephone: (601) 693-2393
Facsimile: (601) 482-7855

---

place to facilitate this recovery. Accordingly, complete preemption does not apply in this case and the Court lacks subject matter jurisdiction.").

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2017, the foregoing Motion to Remand and for Costs and Fees was electronically filed with the Clerk of this Court by using the Court's CM/ECF system, which sent a Notice of Filing Activity to all counsel of record, and is available for downloading and viewing from the CM/ECF system.

*/s/ Jacqueline H. Ray*
Jacqueline H. Ray (MBN 100169)